J. D. THAMES, Commissioner
for the Court:[1]
In 1977, Mrs. Margret Gaines Gentry, the sister of J. B. Haralson, instituted two suits in the Chancery Court of Newton County, Mississippi in the name of J. B. Haralson as his temporary guardian against Mrs. Lottie Gaines Haralson, his wife. The first suit was to set aside a deed executed by J. B. Haralson January 24, 1966 to his wife, Lottie Gaines Haralson, which conveyed a one-half interest in their homestead. The second suit sought an annulment of the July 23, 1962 marriage of J. B.. Haralson and Lottie Gaines Haralson. A lack of mental capacity on the part of J. B. Haral-son was the basis of both suits. Mrs. Haral-son filed an answer in both suits denying that he lacked the mental capacity to enter into a valid marriage and to execute the deed. She also averred that the annulment action was barred under the provisions of Section 93-7-3, Mississippi Code Annotated (1972) because it was not brought within six months after the marriage.
The causes were consolidated for trial and a final decree was entered cancelling the deed and annulling the marriage.
The threshold question in the annulment suit is whether it was barred by provisions of Section 93-7-3, Mississippi Code Annotated (1972). For convenience the statute is quoted in full:
A marriage may be annulled for any one of the following causes existing at the time of the marriage ceremony, to-wit: (a)Incurable impotency.
(b) Insanity or idiocy of either or both parties. Action of an insane spouse may be brought by guardian or in the absence thereof by next friend, provided suit be brought within six (6) months after marriage.
(c) Failure to comply with the provisions of sections 93-1-5 to 93-1 — 9 when any marriage affected by such failure has not been followed by cohabitation.
Or, in the absence of ratification:
(d) When either of the parties to a marriage shall be incapable, from want of age or understanding, of consenting to any marriage, or shail be incapable from physical causes of entering into the marriage state, or where the consent of either party shall have been obtained by force or fraud, the marriage shall be void from the time its nullity shall be declared by a court of competent jurisdiction.
(e) Pregnancy of the wife by another person, if the husband did not know of such pregnancy.
Suits for annulment under subsections (d) and (e) shall be brought within six (6) months after the ground therefor is or should be discovered, and not thereafter. The causes for annulment of marriage set forth in this section are intended to be new remedies and shall in no way affect the causes for divorce declared elsewhere to be the law of the State of Mississippi as they presently exist or as they may from time to time be amended.
The statute is plain and unambiguous. It provides a specific time limit for bringing actions for annulment for the causes set forth in subsections (b), (d) and (e).
The ceremonial marriage of J. B. Haral-son and Mrs. Lottie Gaines Haralson was consummated on July 23, 1962, and they continuously lived together until 1975, which was two years after J. B. Haralson suffered a paralytic stroke in 1973. This action was not instituted within six months after their marriage and is therefore barred by Section 93-7-3.
*192 A careful review and study of the facts and the reasonable conclusion necessarily drawn therefrom as set forth in this record brings us to the conclusion that J. B. Haralson had sufficient mentality to know and realize the nature and effect of his marital act and his marital duties and obligations resulting therefrom. Let us illustrate. It is evidently true that Mr. Haral-son had some kind of congenital ailment or condition which he carried throughout his life and which did affect his I.Q. and limited his capacity in various ways, but did not interfere with his ordinary day to day life style. The record discloses, without conflict, that there was no mention or complaint of his mental capacity until after his paralytic stroke and his separation from his present wife. Mr. Haralson had been married previously and he and Myrtle, his first wife, had lived together for eighteen years until Myrtle died as a result of a heart attack. No one, not even his own family, ever questioned the validity of this marriage, nor complained of his lack of mental capacity, his ability to perform his marital duties and obligations, and his ability to support his wife.
Now let us look to his capacity to own and convey land. His father deeded sixty, sixty-one and sixty-two acres, respectively, of land in Newton County to Mr. Haralson, his brother and his sister, Mrs. Margret Gentry, who now questions his mental capacity. There was no question raised at that time of Mr. Haralson’s mental capacity to hold, own and possess this same land involved here. Sometime after he became the owner in possession of this land, a question arose about the descriptions in the aforesaid deeds, and it became necessary for these parties to interchange correction deeds. Mrs. Gentry and the brother all recognized the mental capacity of J. B. Har-alson to execute and deliver the necessary deeds, and no one has questioned these transactions to this day.
Mr. Haralson owned and possessed certain real and personal property, he farmed his own lands, raised cattle and hogs, and he and his wife lived a somewhat ordinary life. He had a driver’s license, he owned and drove a car, he owned and operated a tractor and fixed plow points for neighbors. He said he knew and performed his marital duties and obligations. About four years after their marriage, J. B. Haralson conveyed, at her suggestion, a one-half interest in the property on which they lived to his wife. There was nothing unnatural about this act and nothing was ever said or done by anyone until many years later after he had suffered his paralytic stroke and moved to his sister’s home.
Reluctant as we are to reverse a chancellor on a question of fact, we are constrained to hold that the chancellor in this case was manifestly wrong in setting aside the deed from J. B. Haralson to Lottie Gaines Haral-son and annulling the marriage of J. B. Haralson and Lottie Gaines Haralson.
Therefore, the judgment rendered in this cause is reversed and judgment is entered here for the appellant.
REVERSED AND RENDERED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.
LEE, J., took no part.

. Sitting pursuant to Chapter 430, Laws of 1976. The above opinion is adopted as the opinion of the Court.